**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                              )
JAMES M. LAVINE,              )
                              )
              Plaintiff,      )
                              )
v.                            )          Civil Action
                              )          No. 23-cv-10987
MASS GENERAL BRIGHAM INCORPORATED, )
NORTH SHORE MEDICAL CENTER, INC., )
                              )
              Defendants.     )
_____)
```

**MEMORANDUM AND ORDER**

November 28, 2023

Saris, D.J.

**INTRODUCTION**

This case involves a nurse's request for a religious exemption from a mandatory COVID-19 vaccination policy. Defendant Mass General Brigham, Inc. ("MGB") is a major healthcare network that operates, among other hospitals, Defendant North Shore Medical Center, Inc. ("NSMC"). Plaintiff James M. Lavine worked as a nurse at NSMC. On June 24, 2021, MGB announced a mandatory COVID-19 vaccination policy requiring all employees, including Lavine, to be vaccinated against COVID-19 (the "Vaccination Policy"). Lavine submitted a request for a religious exemption, which was denied by MGB. As a result of Lavine's failure to comply with the Vaccination Policy, MGB terminated his employment. After filing a charge of discrimination with the Equal Employment Opportunity Commission

("EEOC"), Lavine sued Defendants on the grounds that he was wrongfully terminated.

Defendants now move to dismiss Lavine's complaint. For the following reasons, the Court **ALLOWS IN PART** and **DENIES IN PART** Defendants' motion to dismiss (Dkt. 13).

**BACKGROUND**

I.   **Factual Background**

The following facts are drawn from the First Amended Complaint ("FAC") and are taken as true at this stage. See Dkt. 1-1 at 12-19.

Starting in February 2005, Lavine was employed as a registered nurse at NSMC, a hospital and healthcare provider affiliated with MGB. On June 24, 2021, MGB announced that it would be implementing a Vaccination Policy requiring employees to obtain COVID-19 vaccinations by October 15, 2021. The Vaccination Policy included provisions for religious and medical exemptions in certain circumstances. Lavine submitted a request to be exempt from the Vaccination Policy based on his "deeply held religious belief." Id. at 13. In the past, Lavine's exemption requests for the flu vaccine had been routinely approved. On September 13, 2021, MGB denied Lavine's request for a religious exemption. After failing to take the COVID-19 vaccine, Lavine was suspended without pay on October 15 and later terminated on November 17, 2021.

II.  **Procedural History**

Shortly thereafter, Lavine reported his termination to the EEOC. On August 25, 2022, the EEOC issued Lavine a "right-to-sue" letter, which stated: "If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice." Id. at 20 (emphasis omitted). On November 18, 2022 -- eighty-five days after the issuance of his right-to-sue letter -- Lavine filed suit against Defendants in Essex Superior Court, alleging seven state law claims.[1] Id. at 4-11. Lavine did not assert a Title VII cause of action in his original complaint. On April 14, 2023, Lavine amended his complaint, substituting the original seven state law claims for three new counts: (1) violation of Title VII and Mass. Gen. Laws ch. 151B; (2) violation of "Equal Protection and Treatment Rights" under the Fourteenth Amendment; and (3) violation of "Substantive and Procedural Due Process Rights" under the First, Fourth, and Fourteenth Amendments and the Massachusetts Declaration of Rights. Id. at 12-18. Defendants removed the case to this Court and then moved to dismiss all three counts in Lavine's FAC. Dkts. 1, 13.

---

[1] The seven state law claims alleged in Lavine's original complaint were: detrimental reliance / promissory estoppel, intentional misrepresentation / deceit, negligence, tortious interference with business relationship, intentional infliction of emotional distress, good faith and fair dealing, and assault. See Dkt. 1-1 at 8-10.

3

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the court] to draw on [its] judicial experience and common sense." Schatz v. Republican State Leadership Comm'n, 669 F.3d 50, 55 (1st Cir. 2012) (cleaned up) (quoting Iqbal, 556 U.S. at 679).

## DISCUSSION

### I.   Timeliness of Title VII Claim

Defendants' first argument is that Lavine's Title VII claim should be dismissed as time-barred. Federal law requires Title VII claims to be filed within ninety days from a plaintiff's receipt of a right-to-sue letter from the EEOC. See Franceschi v. U.S. Dep't of Veteran Affs., 514 F.3d 81, 85 (1st Cir. 2008); 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . ."). The EEOC issued Lavine a right-to-sue letter on August 25, 2022. See Dkt. 1-1 at 20. Because Lavine "did

4

not file the FAC, in which he asserted his Title VII claim for the first time, until April 14, 2023 -- 232 days later," Defendants contend that Lavine's Title VII claim is time-barred. Dkt. 14 at 7. In response, Lavine argues that his Title VII claim relates back to the filing of his original complaint on November 18, 2022, which was timely filed within the ninety-day window.

**A. Choice of Law**

As a threshold matter, the parties disagree as to whether federal law or Massachusetts state law applies to the relation back issue in this case. Rule 15(c) of the Federal Rules of Civil Procedure, which Defendants argue governs the amendment of pleadings in federal court, provides:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading . . . .

Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) of the Massachusetts Rules of Civil Procedure, which Lavine argues is the applicable rule, mirrors the federal rule. It states: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading." Mass. R. Civ. P. 15(c).

While the analysis would be similar under either the federal or state rule, Lavine is correct that Massachusetts Rule 15(c) governs the application of the relation back doctrine here. Lavine amended his complaint on April 14, 2023, while the case was still pending in Massachusetts state court. See Dkt. 1-1 at 12-19. The case was not removed until May 4, 2023. See Dkt. 1. The Federal Rules of Civil Procedure "apply to a civil action [only] after it is removed from a state court." Fed. R. Civ. P. 81(c)(1) (emphasis added). "[S]tate law determines whether an amended pleading filed in state court prior to removal relates back to an earlier state-court pleading." 2 Steven S. Gensler & Lumen N. Mulligan, Federal Rules of Civil Procedure, Rules and Commentary, Rule 81 (citing Taylor v. Bailey Tool Mfg. Co., 744 F.3d 944, 946-47 (5th Cir. 2014); Pac. Emps. Ins. v. Sav-A-Lot of Winchester, 291 F.3d 392, 400-01 (6th Cir. 2002)); see also Aforigho v. Tape Prods. Co., 334 F.R.D. 86, 92 n.2 (S.D. Tex. 2020) ("To be clear, for relation-back purposes, the state rule applies to determine whether an amended petition filed in state court relates back to the date of the original petition."). Thus, it is the relation back doctrine embodied in the Massachusetts rules, not the Federal Rules, that governs the relation back analysis.

**B. Relation Back Doctrine**

The Massachusetts Rule 15(c) relation back standard is met if the amended complaint alleges claims arising "out of the same

6

conduct, transaction, or occurrence set forth in the original complaint." Abernathy v. Dewey, 196 F. Supp. 3d 157, 166 (D. Mass. 2016). Under Massachusetts law, Lavine's Title VII claim arose out of the same occurrence and facts alleged in the original complaint. Both complaints describe the same Vaccination Policy issued by Defendants, allege the same facts regarding Lavine's denied religious exemption and allegedly wrongful termination, seek redress for the same purported injuries, and name the same two defendants. Compare Dkt. 1-1 at 4-11, with id. at 12-18. Moreover, the purpose of limitation periods is to "ensure potential defendants are put on notice of claims against them and to 'avoid the difficulties inherent in litigating matters long past.'" Pajak v. Rohm & Haas Co., No. 19-10277, 2019 WL 6715181, at *4 (D. Mass. Dec. 9, 2019) (quoting Marcoux v. Shell Oil Prods. Co., 524 F.3d 33, 42 (1st Cir. 2008)). Here, Lavine's original complaint details facts pertaining to the religious discrimination he allegedly faced, his communications with the EEOC, and his receipt of the EEOC right-to-sue letter -- sufficiently putting Defendants on notice of a Title VII claim.

Defendants contend that because Lavine "withdrew all seven [state law] claims he originally purported to bring," this was in effect a voluntary dismissal of his original complaint, and therefore the original complaint could no longer "provide the requisite anchor pleading to salvage his otherwise-untimely Title

VII filing." Dkt. 14 at 8-9. Defendants cite to several cases that support the proposition that "an amendment which eliminates causes of action has the effect of a voluntary dismissal by [the] plaintiff[] of such causes." Addamax Corp. v. Open Software Found., Inc., 149 F.R.D. 3, 6 (D. Mass. 1993); see also Transwitch Corp. v. Galazar Networks, Inc., 377 F. Supp. 2d 284, 289 n.5 (D. Mass. 2005). However, these cases do not address Mass. R. Civ. P. 15(c) or the relation back doctrine at all. Although Lavine's seven state law claims have been voluntarily dismissed due to their elimination from the FAC, Lavine's new federal causes of action still relate back to his original complaint. Lavine's FAC is not a new pleading, as his three new counts arise "out of the conduct, transaction, or occurrence" set forth in his original complaint. Mass. R. Civ. P. 15(c). Lavine's FAC relates back to the date of filing of his original complaint and his Title VII claim is therefore timely.

## II.  **Title VII Claims**

Under Count I, Lavine functionally alleges two claims: that Defendants violated Title VII and Chapter 151B[2] by (1) failing to accommodate his request for a religious exemption to the Vaccination Policy, and (2) terminating his employment in

---

[2] "Chapter 151B uses a similar framework to evaluate failure to accommodate claims" to that used in federal Title VII accommodation cases. Mekonnen v. OTG Mgmt., LLC, 394 F. Supp. 3d 134, 157 (D. Mass. 2019), aff'd, 2021 WL 1110915 (1st Cir. Mar. 23, 2021).

retaliation for requesting a religious exemption to the Vaccination Policy.

### A. Failure to Accommodate Claim

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees based on religion. 42 U.S.C. § 2000e-2(a). Religious discrimination claims under Title VII are evaluated using a two-part framework. "First, [Lavine] must make [his] prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004). Second, "[i]f [Lavine] establishes [his] prima facie case, the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." Id.

### 1. Prima Facie Case of Religious Discrimination

To establish a prima facie case of religious discrimination, Lavine must meet a three-part test. He must show that: "(1) a bona fide religious practice conflicts with an employment requirement, (2) he . . . brought the practice to the [employer's] attention, and (3) the religious practice was the basis for the adverse employment decision." EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir.

9

2002) (quoting <u>EEOC v. United Parcel Serv.</u>, 94 F.3d 314, 317 (7th Cir. 1996)).

In this case, Lavine has met his burden. The FAC alleges that due to Lavine's "deeply held religious belief," he submitted a religious exemption in September 2021, requesting to be exempt from the COVID-19 and flu vaccines. Dkt. 1-1 at 13. MGB's Religious Exemption Review Committee reviewed Lavine's request and denied it. Lavine alleges that Defendants then wrongfully terminated him "for failing to take the COVID-19 vaccine, despite his sincerely held religious beliefs." <u>Id.</u> at 13-14. When all reasonable inferences are drawn in Lavine's favor, the FAC plausibly establishes that (1) Lavine holds a religious belief that conflicts with the Vaccination Policy, (2) he informed MGB of that belief, and (3) that his choice to remain unvaccinated due to his religious belief was the basis for terminating his employment.

Defendants argue that the FAC "contains no allegations describing any particular religious practice of Plaintiff" and "nothing about how Plaintiff's religious beliefs or practices conflicted with the Vaccination Policy." Dkt. 14 at 12. To support a plausible prima facie case for a Title VII claim, the Third Circuit has ruled that employees must inform their employers of their religious beliefs prior to the alleged discriminatory action. <u>Geraci v. Moody-Tottrup, Int'l, Inc.</u>, 82 F.3d 578, 581 (3d Cir. 1996). The FAC contains an allegation that Lavine's previous

religious exemption requests for flu vaccines were "routinely approved by Defendant." Dkt. 1-1 at 14. This statement establishes that Defendants allegedly knew that Lavine's religious beliefs conflicted with vaccination requirements, having approved his exemptions in the past. See Morris v. Asante Health Sys., No. 22-01707, 2023 WL 3766615, at *3 (D. Or. May 17, 2023) (finding plaintiff established a prima facie case of religious discrimination by alleging that defendant had previously approved her religious exemption from vaccination), report and recommendation adopted, 2023 WL 3764562 (D. Or. June 1, 2023).

Because the allegations in the FAC suffice to establish a prima facie case of religious discrimination, the analysis turns next to Defendants' undue hardship defense.

### 2. Undue Hardship

The Supreme Court recently clarified that under Title VII, "undue hardship" is shown "when a burden is substantial in the overall context of an employer's business." Groff v. DeJoy, 600 U.S. 447, 468 (2023). Courts must consider "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Id. at 470-71 (cleaned up). "Considerations include not only direct economic costs, but indirect ones related to health and safety." Adams v. Mass Gen. Brigham, Inc., No. 21-11686, 2023 WL 6318821, at *5 (D. Mass. Sept.

11

28, 2023). "Although undue hardship is an affirmative defense, dismissal on a Rule 12(b)(6) motion is nonetheless appropriate if the facts establishing the defense are clear on the face of the plaintiffs' pleadings and there is no doubt that the plaintiffs' claims are barred." Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023) (cleaned up), cert. denied, 2023 WL 7117039 (U.S. Oct. 30, 2023) (mem.).

Defendants claim that accommodating Lavine by permitting him "to remain in his position as a hospital nurse while unvaccinated against COVID-19" would have placed patients and other employees at an "unacceptable increased risk of danger from infection with a potentially fatal disease." Dkt. 14 at 16-17. As support, Defendants reference leading public health authorities explaining that COVID-19 vaccines are safe and effective at reducing the spread of infection. In contrast, Lavine argues that the FAC does not support a defense at this early stage of the litigation. Lavine avers that MGB could have reasonably accommodated him without undue hardship by permitting him to "wear a mask while at work and continue to be frequently tested." Dkt. 17 at 15. Lavine also claims that "[b]eing vaccinated has virtually no effect on spreading the disease." Id. at 16.

Determining undue hardship in Lavine's case at this stage is premature. Evaluating Lavine's requested accommodations and their "practical impact in light of the nature, size, and operating cost"

of MGB and NSMC is a fact-intensive inquiry. See Groff, 600 U.S. at 470-71 (cleaned up). Defendants have not established the economic and non-economic costs associated with accommodations such as masking, routine COVID-19 testing, or other mitigating efforts that could have been implemented had Lavine's religious exemption been granted. Moreover, it is not clear from the present record the degree of Lavine's exposure to patients, the nature of his patient-facing responsibilities, and his ability to work remotely. See Adams, 2023 WL 6318821, at *8 ("It is not possible, on the current record, to evaluate the undue hardship created by any one specific accommodation -- even if it is possible to do so on a wholesale basis."). The Court "will not resolve the parties' disputes over science, federal compliance, and administrative logistics" in order to decide the present motion. Shane v. Bio-Techne Corp., No. 22-3039, 2023 WL 3936638, at *5 (D. Minn. June 9, 2023) (denying motion to dismiss a Title VII failure to accommodate claim because undue hardship of accommodating plaintiff's exemption from COVID-19 vaccination policy was not clearly established).

Defendants cite to several cases in which courts relied on the increased risk of COVID-19 as partial grounds for an undue hardship defense on a motion to dismiss. See, e.g., Does 1-2 v. Hochul, 632 F. Supp. 3d 120, 144-45 (E.D.N.Y. 2022); Lowe, 68 F.4th at 719-20. However, these cases are inapposite. Both Hochul and

13

Lowe predominantly relied on the fact that the religious accommodation at issue "would impose an undue hardship on [defendants] because it would require them to violate state law." Hochul, 632 F. Supp. 3d at 145 (emphasis added); Lowe, 68 F.4th at 719 ("Maine law makes clear that, by providing the plaintiffs their requested accommodation as described in the complaint, the Providers would have risked onerous penalties, including license suspension."). Defendants have not identified an analogous state or federal law that they would have been forced to violate if they had accommodated Lavine's religious exemption to the Vaccination Policy.

Because the facts establishing "whether a hardship would be substantial in the context of [the] employer's business" are not clear on the face of Lavine's pleading, see Groff, 600 U.S. at 471, Defendants' motion to dismiss Lavine's failure to accommodate claim under Title VII and Chapter 151B (Count I) is **DENIED**.

### B. Retaliation Claim

To establish a prima facie case of retaliation under Title VII, Lavine must establish (1) that he engaged in protected conduct; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected conduct and adverse action. Colón-Fontánez v. Mun. of San Juan, 660 F.3d 17, 36 (1st Cir. 2011). If Lavine makes a prima facie case, the burden then shifts to Defendants to articulate a

legitimate, non-retaliatory reason for the adverse action. <u>Jones</u> <u>v. Walgreen Co.</u>, 679 F.3d 9, 20 (1st Cir. 2012).

Defendants argue that Lavine has failed to establish the first and third elements of his prima facie case of retaliation. As to the first element, Defendants contend that Lavine's "failure to comply with a condition of his employment is not protected activity." Dkt. 14 at 18. However, the FAC asserts that Defendants denied Lavine's religious exemption and offered no other accommodations before terminating him. Therefore, Lavine sufficiently pled the first element of retaliation because "[r]equesting a reasonable accommodation is a protected activity." <u>Together Emps. v. Mass Gen. Brigham, Inc.</u>, 573 F. Supp. 3d 412, 444 (D. Mass. 2021) (citing <u>Colón-Fontánez</u>, 660 F.3d at 36), <u>aff'd</u>, 32 F.4th 82 (1st Cir. 2022).

As to the third element, Defendants contend that the FAC does not establish a causal connection between Lavine's request for a religious exemption and his termination. The FAC states in conclusory form that "Defendant[s] retaliated against [Lavine] because he refused to inject the COVID vaccine." Dkt. 1-1 at 16. However, it was not Lavine's "request for accommodation that resulted in [his] termination, but [his] failure to get the COVID-19 vaccine after [his] request for accommodation was denied." <u>Lucky</u> <u>v. COBX, Co.</u>, No. 22-12514, 2023 WL 3359607, at *2-3 (E.D. Mich. May 10, 2023) (emphasis omitted) (granting motion to dismiss

retaliation claim for lack of causation between request for religious exemption to COVID-19 vaccine and termination).

Because Lavine has not sufficiently alleged his retaliation claim, he may only seek relief through his failure to accommodate claim under Title VII and Chapter 151B (Count I).

## III. **State Action Doctrine**

Counts II and III of Lavine's FAC allege several causes of action under the United States Constitution and Massachusetts Declaration of Rights. Specifically, Count II alleges violations of Lavine's "Equal Protection and Treatment Rights" under the Fourteenth Amendment. Count III alleges violations of Lavine's "Substantive and Procedural Due Process Rights" under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights. Defendants aver that these claims must be dismissed because "MGB and NSMC are not governmental actors; they are a privately-owned healthcare network and hospital entity." Dkt. 14 at 10.

"The Supreme Court has long held that the United States Constitution applies only to actions by governments and their employees." Tynecki v. Tufts Univ. Sch. of Dental Med., 875 F. Supp. 26, 30 n.5 (D. Mass. 1994) (citing Rendell-Baker v. Kohn, 457 U.S. 830 (1982)). Similarly, "claims under the Massachusetts Constitution require a 'deprivation of rights fairly attributable

to the State.'" <u>Delmonte v. Laidlaw Env't. Servs., Inc.</u>, 46 F. Supp. 2d 89, 97 (D. Mass. 1999) (quoting <u>Tynecki</u>, 875 F. Supp. at 30 n.5). The Supreme Court has identified several areas of inquiry for courts to consider in determining when conduct by a private actor rises to the level of state action, including:

> 1) [W]hether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; 2) whether the private actor has assumed a traditionally public function; and 3) whether there is a sufficient "symbiotic relationship" between the state and the private actor so that the state may be recognized as a joint participant in the challenged activity.

<u>Citizens to End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.</u>, 745 F. Supp. 65, 69 (D. Mass. 1990); <u>see also</u> <u>Rodriguez-Garcia v. Davila</u>, 904 F.2d 90, 96 (1st Cir. 1990).

First, Lavine maintains that Defendants acted as agents of state actors because they were "**ordered** to create the [Vaccination Policy] per a mandate of the Federal Government." Dkt. 17 at 7. According to Lavine, the Centers for Medicare & Medicaid Services ("CMS") mandated hospitals receiving Medicare and Medicaid funds, such as MGB, to implement employee COVID-19 vaccination requirements, as set forth in a CMS interim final rule.[3] However, as Defendants point out, this CMS rule was not published until November 5, 2021, a few months <u>after</u> MGB issued its Vaccination

---

[3] Centers for Medicare & Medicaid Services, <u>Omnibus COVID-19 Health Care Staff Vaccination (CMS-3415-IFC)</u> (Nov. 5, 2021), https://public-inspection.federalregister.gov/2021-23831.pdf.

Policy on June 24, 2021. In fact, the CMS rule was not published until 21 days <u>after</u> MGB had placed Lavine on forced administrative leave on October 15, 2021. Defendants' Vaccination Policy and their suspension of Lavine's employment could not have been the implementation of a federal mandate, as the CMS rule had not yet been issued.

Lavine also argues that Defendants were state actors on a slew of other grounds, including: (1) the "close nexus" between the state and the challenged action, (2) the public function test, (3) the state compulsion test, (4) the state's exercise of coercive power, and (5) Defendants' receipt of federal funding. <u>See</u> Dkt. 17 at 7-9. The First Circuit has already held that MGB's conduct in relation to its Vaccination Policy was not state action. <u>See</u> <u>Together Emps. v. Mass Gen. Brigham, Inc.</u>, 32 F.4th 82, 87 (1st Cir. 2022) ("MGB is not a state actor and is not bound by the Free Exercise Clause."). Lavine's FAC does not allege any plausible facts suggesting that the government was involved in the creation or execution of MGB's Vaccination Policy. <u>See</u> <u>McEntee v. Beth</u> <u>Israel Lahey Health, Inc.</u>, No. 22-11952, 2023 WL 4907617, at *3 (D. Mass. Aug. 1, 2023) (finding healthcare organization that implemented mandatory vaccination policy was not state actor because "[n]owhere does [the complaint] suggest that any defendant acted under color of state law or on behalf of a state"). Moreover, "extensive regulation and financial aid, without more, is not

sufficient to elevate [D]efendants' conduct to the level of state action." <u>Tynecki</u>, 875 F. Supp. at 33. Because Defendants are not state actors and were not engaged in state action, Lavine's federal constitutional claims (Counts II and III) are dismissed as a matter of law.

The portion of Count III brought under the Massachusetts Declaration of Rights is also dismissed because although an action under the Massachusetts Civil Rights Act ("MCRA") does not require state action, <u>see</u> <u>Batchelder v. Allied Stores Corp.</u>, 473 N.E.2d 1128, 1131 (Mass. 1985), a MCRA claim requires proof "that the interference or attempted interference was by 'threats, intimidation or coercion.'" <u>Bally v. Northeastern Univ.</u>, 532 N.E.2d 49, 51-52 (Mass. 1989). The threat that Lavine alleges is his "threatened, and later actual, loss of employment, but the threatened or actual loss of employment is 'not coercive in the relevant sense under the MCRA.'" <u>McEntee</u>, 2023 WL 4907617, at *4-5 (quoting <u>Nolan v. CN8</u>, 656 F.3d 71, 77 (1st Cir. 2011)).

### ORDER

With respect to Defendants' motion to dismiss (Dkt. 13), the Court **<u>ALLOWS</u>** the motion as to the claims under the Constitution and Massachusetts Declaration of Rights (Counts II and III) and the retaliation claim under Title VII and Chapter 151B (Count I). The Court **<u>DENIES</u>** the motion as to the failure to accommodate claim under Title VII and Chapter 151B (Count I).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge